**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 19-cr-20803-BLOOM**

UNITED STATES OF AMERICA
     Plaintiff,

v.

SALMAN RASHID,

     Defendant.

_____/

## ORDER GRANTING GOVERNMENT'S MOTION UNDER THE FIRST PRONG OF SELL V. UNITED STATES

**THIS CAUSE** is before the Court on the Government's Motion for a Finding that the United States has an Important Governmental Interest Supporting Involuntary Medication to Restore Defendant Salman Rashid's Competency, ECF No. [96] ("Motion"). Defendant filed a Response in opposition, ECF No. [102], and the Government filed a Reply, ECF No. [105]. The Court has considered the Motion, the Response, the Reply, the record in the case, and is otherwise fully advised. The Government's Motion is granted.

## I.    BACKGROUND

On November 21, 2019, Defendant was charged by Indictment, ECF No. [9], with one Count of Solicitation to Commit a Crime of Violence, in violation of 18 U.S.C. § 373. On June 11, 2021, during a status conference, Defendant's attorney raised the issue of Defendant's competency to stand trial. ECF No. [48]. The Court thereafter ordered that the Bureau of Prisons conduct a psychological examination to evaluate the Defendant's competency pursuant to 18 U.S.C. § 4241(b). ECF No. [49]. The Court held a competency hearing on July 11, 2022, to determine whether the Defendant was competent to proceed to trial pursuant to 18 U.S.C. § 4241(a).

Consistent with 18 U.S.C. § 4241(c), the Court considered the testimony, including the evaluations and psychological reports by Dr. Lisa Feldman and Dr. Marie Di Cowden. The Court ultimately found that the Defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. Pursuant to 18 U.S.C. § 4241(d), the Defendant was committed to the custody of the Attorney General for treatment to determine whether there is a substantial possibility in the foreseeable future that he will become competent to allow the proceedings to continue. *See* ECF No. [86].

On August 10, 2023, the Court received a report from the forensic psychologist who opines that there is a substantial probability that the Defendant's competency to stand trial can be restored with appropriate treatment with antipsychotic medication. However, the Defendant has refused.

The Government now seeks to involuntarily medicate the Defendant in an effort to restore him to competency based on Defendant's continuing incompetency, his refusal to voluntarily take antipsychotic medication, and the results of the Forensic Evaluation issued by FMC-Butner, ECF No. [94] at 19-20. In its Motion, the Government requests that the Court finds that the Government has an important governmental interest supporting involuntary medication to restore the Defendant to competency. It further requests the Court enter an Order requesting that the Bureau of Prisons submit an Addendum to the Forensic Evaluation outlining the proposed treatment regimen and recommended medication it would involuntarily administer to Defendant to restore him to competency. Should the Court find that the first factor of *Sell v. United States,* 539 U.S. 166, 180 (2003) has been established by the Government by clear and convincing evidence, then FMC-Butner advises it will prepare an Addendum to the Forensic Evaluation which will outline in detail the proposed treatment plan and provide further details about the remaining *Sell* factors. ECF No.

[94] at 20. If the Court finds that the first *Sell* prong has not been met by clear and convincing evidence, Defendant may be subjected to further evaluation under § 4246. *Id.*

Defendant responds that the Government does not have a sufficient interest in prosecuting him because he is not charged with a serious crime and because special circumstances exist. Therefore, in light of the defense objection, this Court analyzes whether the Government has established the first *Sell* factor by clear and convincing evidence.

## II.    <u>LEGAL STANDARD</u>

The Government's Motion and the Defendant's Response properly focus on the first factor under *Sell*. In *Sell*, the Supreme Court provided factors for the courts to use in evaluating whether to order involuntary medication for the purposes of restoring a defendant to competency in order to stand trial. To establish the propriety of ordering the involuntary medication of an incompetent defendant, the first prong of *Sell* requires the government to show that "*important* governmental interests are at stake" and that special circumstances do not sufficiently mitigate those interests. *Id.* Special circumstances include (1) lengthy confinement in institutions for the mentally ill which may diminish risks that normally attach to a defendant who committed a serious crime; (2) difficulties in trying a defendant who after years of confinement regains competence and may have faded memories and less available evidence for trial; and (3) when a defendant has already been confined for a significant amount of time for which he or she would receive credits towards a sentence if imposed. *Sell*, 539 U.S. at 180.

In *Sell*, the Supreme Court held that it was constitutionally permissible to administer antipsychotic medication to a mentally ill detainee in order to render him competent to stand trial if the United States shows by clear and convincing evidence: (1) the existence of important governmental interests; (2) that the "involuntary medication will significantly further those

concomitant state interests;" (3) that the involuntary medication is necessary to further the important interests; and (4) that the "administration of the medication is medically appropriate," i.e., in the patient's best medical interest in light of his medical condition. *Id.* at 180-81 (emphasis omitted). Those factors are commonly referred to as the four *Sell* factors.

As the Supreme Court noted, "[t]he Government's interest in bringing to trial an individual accused of a serious crime is important." *Id.* at 180. Thus, if a crime of which Defendant is accused is "serious," then the Government's interest in prosecuting Defendant is "important." *United States v. Fuller*, 581 F. App'x 835, 836 (11th Cir. 2014). The Supreme Court noted that courts "must consider the facts of the individual case in evaluating the government's interest in prosecution." *Sell*, 539 U.S. at 180. "The Government's interest . . . is important whether the offense is a serious crime against the person or a serious crime against property." *Id.* However, the Government's interest in prosecuting those charged with serious crimes may be mitigated by special circumstances. *Id.* The Government "bears the burden of proving the factual findings underlying the *Sell* factors by clear and convincing evidence." *United States v. Diaz*, 630 F.3d 1314, 1332 (11th Cir. 2011).

## III.   DISCUSSION

### A.  Defendant is Charged with a Serious Offense

Defendant is charged with Solicitation to Commit a Crime of Violence, in violation of 18 U.S.C. § 373, which carries a maximum penalty of twenty years imprisonment. Defendant argues that his crime is not a crime of actual violence or a crime against a person or property, but rather "mere words." ECF No. [102] at 6. Defendant asserts his crime is not sufficiently serious but involves only his delusional speech and "does not involve any physical action on his speech; it

does not involve any weapons, planning, traveling, trespassing, or otherwise dangerous, assaultive, or violent behavior, but rather simple bloviation." *Id.*

The Government asserts that Defendant's crime is a "serious crime" because the statute under which Defendant was charged seeks to protect the most basic human need for security—the right to live. ECF No. [105] at 3. In its Motion, the Government also asserts that, in addition to Defendant's Facebook posts, Defendant's conduct constitutes a serious crime — attempting to contact members of ISIS and then instructing those persons he believed were members of ISIS to carry out a terrorist attack on his behalf and actively planning to kill people — exceeds simple "bloviation." *Id* at 2.

In its Motion, the Government detailed the allegations regarding Defendant's conduct: in April 2018, the FBI began an investigation into Defendant due to alarming posts on his Facebook account, including "destruction to those who would not accept his version of Islam." ECF No. [96] at 2. That month, the FBI verified and matched Defendant to those public posts and directed an online Confidential Human Source to build a rapport with Defendant and express support for his views on Islamic suppression and support for Sharia law, transitioning to another Confidential Human Source to "facilitate in-person meetings with [Defendant]." *Id.* In May 2019, Defendant, on his own accord, began to solicit the Confidential Human Source to contact members of ISIS and instruct them to carry out terrorist attacks on Defendant's behalf. *Id*. at 3. Defendant continued this solicitation through the fall of 2019, providing details as to the types of attacks he desired, and targets (such as conducting attacks on nightclubs and religions buildings). *Id*. As this continued, the FBI introduced another Confidential Human Source that Defendant believed to be an ISIS member who would conduct an attack for him. *Id*. Defendant continued, pushing for an attack to happen "soon." *Id*. In November 2019, Defendant identified two specific targets, the deans of the

two school from which he was expelled or suspended, that Defendant wanted killed "with devices [] as big as possible." *Id*. Defendant was arrested on November 22, 2019. *Id*.

Neither the Supreme Court nor the Eleventh Circuit has provided a standard to measure whether an offense is "serious." *United States v. Benitez*, No. 19-cr-80141, 2020 WL 7332310, at *1 (S.D. Fla. Dec. 14, 2020). However, "[c]ourts in this District have frequently found that the best objective measure of the seriousness of the alleged crime is the maximum penalty authorized by statute." *Id* at *1. Further, "the statutory maximum penalty provides an objective measure that avoids arbitrary application and 'respects legislative judgments regarding the severity of the crime.'" *United States v. Rodriguez*, 281 F. Supp. 3d 1284, 1293 (S.D. Fla. 2017) (citing *U.S. v. Evans*, 404 F.3d 227, 237 (4th Cir. 2005)).

In addition, the Court must also review the conduct underlying the charged offenses to determine if an offense is sufficiently serious. *See, e.g., Fuller*, 581 F. App'x at 836 (concluding that the charged offense and underlying facts the offense was sufficiently serious for a felon found in possession of a firearm by his parole officer triggered by threats made against law enforcement officers). *See United States v. Palmer*, 507 F.3d 300, 304 (5th Cir. 2007) (holding that courts have "concluded that it is appropriate to consider the maximum penalty, rather than the sentencing guidelines range" under *Sell*, and further, where a defendant has threatened the life of a federal officer, and caused a disruption with risk of harm at a university, a court may also find it appropriate "to upwardly depart from the guidelines recommended sentencing range."); *United States v. Campbell*, No. 13-CR-419 (DLI), 2015 WL 9460133, at *4 (E.D.N.Y. Dec. 23, 2015) (finding that the crime of conspiracy to commit a murder designed to obstruct justice was a serious crime under the *Sell* factors).

Therefore, several circuits have found crimes authorizing punishments of significantly less than a twenty-year statutory maximum penalty to be "serious." *United States v. Evans*, 404 F.3d 227, 238 (4th Cir. 2005) (finding that a felony carrying a maximum punishment of ten years imprisonment for "threatening to murder a federal judge [] is 'serious' under any reasonable standard"); *United States v. Onuoha*, 820 F.3d 1049, 1051 (9th Cir. 2016) (offenses carrying five and ten-year maximum penalties were considered "serious" for a defendant with no criminal history and therefore falling in a low sentencing guidelines range who "[made] phone calls to LAX officials on the eve of the anniversary of the September 11th attacks, urging evacuation of the airport"); *United States v. Valenzuela–Puentes*, 479 F.3d 1220, 1226–27 (10th Cir. 2007) (a twenty-year statutory maximum sentence subject to a potential plea-reduction to six to eight years was still "sufficient to render the underlying crime 'serious'" given the defendant's long criminal history); *See* 507 F.3d at 304 ("courts have held that crimes authorizing punishments of over six months are 'serious'").

Here, Defendant is charged in violation of 18 U.S.C. § 373 for Solicitation to Commit a Crime of Violence, by soliciting a Confidential Human Source to contact ISIS members and instruct those ISIS members to conduct various attacks and to murder the deans of two local colleges using a weapon of mass destruction. ECF No. [3] at 5. Thus, given the twenty-year statutory maximum, the law in this Circuit, and the nature and underlying conduct of the offense, the Court finds that the charged offense is sufficiently serious to give rise to the Government's interest in prosecuting this Defendant.

Further, as set forth in the forensic evaluation, Defendant experiences significant thought dysfunction and suffers from a "continuous delusional disorder of the grandiose and persecutory type." ECF No. [94] at 12. During the doctors' extensive evaluation of Defendant, he "tended to

perseverate on his case and delusional beliefs," including that he can communicate with God, that he has special powers, and that by praying for someone's death, he can cause their death. *Id.* at 12-13. Defendant's continued delusions further support a finding of an important governmental interest. *See United States v. Gillenwater*, 749 F.3d 1094, 1101 (9th Cir. 2014) (finding that the government had a "substantial interest" when without treatment, the defendant, accused of making threats against government officials, was likely to continue to act on his delusions).

Moreover, as the Government argues, the Government's interest in prosecuting the Defendant does not begin and end with incapacitation. Defendant's conviction would render him a convicted felon, which would bar him from engaging in certain activities, including possessing a firearm and is a significant governmental interest, given Defendant's solicitation and threats of violence. ECF No. [96] at 10. Additionally, the Government has a significant interest in supervising Defendant after he is released from incarceration to ensure that he does not continue to threaten others after his release. *Id.* at 11; *see United States v. Rodriguez*, 281 F. Supp. 3d 1284, 1297 (S.D. Fla. 2017) (acknowledging that the government had a strong interest in restoring a defendant to competency because restoration was the "best hope" to ensure the defendant did not threaten others following his release).

The Government accurately points out that it has the burden of proof on factual findings by clear and convincing evidence to establish the first prong of *Sell. United States v. Diaz*, 630 F.3d 1314, 1331 (11th Cir. 2011). Defendant responds that the offense of which the Defendant is charged is not a "serious crime." Moreover, even if the Court finds that the conduct alleged is a "serious case," Defendant contends that special circumstances mitigate the Government's interest and Defendant should be released from custody. ECF No. [102] at 7, 21. Those special circumstances include the Defendant's deeply held religious beliefs protected by the First

Amendment, the length of Defendant's potential sentence and credit for time already served, and available alternative forms of treatment. *Id*. at 7-16.

### B. "Special Circumstances" Do Not Outweigh the Government's Interests in Prosecuting Defendant

Here, should the Court find that the Government has an important interest in prosecuting the Defendant for a serious crime, the Court must consider whether there are special circumstances that sufficiently "lessen the importance of that interest." *Sell*, 539 U.S. 166, 180. In *Sell* the Supreme Court provided two examples. *Id.* First, where a defendant's failure to take medication voluntarily may result in lengthy confinement in a mental institution ("diminish[ing] the risks that ordinarily attach to freeing without punishment one who has committed a serious crime). *Id.* Second, where a defendant has "already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed . . .)." *Id.*

Defendant argues that several special circumstances mitigate the Government's interest: (1) Defendant's deeply held religious beliefs; (2) the length of Defendant's potential sentence and credit for time already served; and (3) Defendant's potential defense of insanity and civil confinement.[1] ECF No. [102]. Although only Defendant's credit for time served is a special circumstance that may mitigate the Government's interest under *Sell*, the Court will nevertheless analyze the potential merits of Defendant's argument.

---

[1] Defendant also asserts that other alternative forms of treatment constitute a special circumstance that mitigates the Government's interest. ECF No. [102] at 14. Specifically, Defendant argues that Dr. DiCowden, who evaluated Defendant, stated "[Defendant's] best opportunity for improvement must be facilitated by a mental health practitioner of Islamic psychology, preferably one who is well versed in the Sufi tradition." *Id.* However, courts examine whether there are less intrusive alternatives to restore competency under the third *Sell* factor—whether the involuntary medication is "necessary" to further the important interests—rather than as a special circumstance under the first prong. *Sell*, 539 U.S. at 180-81.

1.  **Defendant's Deeply Held Religious Beliefs**

Defendant argues that forcing a prisoner to violate his religious beliefs is in violation of the First Amendment's Free Exercise Clause. ECF No. [102] at 7. Defendant asserts that he is devoted to the strict adherence to the Islamic faith. *Id.* at 9. He contends that because antipsychotic medication temporarily alters the natural state of the body and mind and may also cause permanent and irreparable harm to the same, forced or voluntarily consumption of antipsychotic is contrary to his sincere religious beliefs. *Id.*

Defendant relies on three Supreme Court cases where the Court has shown "wide deference and latitude" to a person exercising sincerely held religious beliefs which are protected under the First Amendment. *Id.* at 7. *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) (holding that it is a violation of the First Amendment to compel a person to use his or her speech for messages they did not believe for a web designer who refused to create wedding designs for a same-sex couple); *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*, 138 S. Ct. 1719 (2018) (holding that the government cannot force a private person, here a baker, to bake a cake for a same-sex wedding celebration given findings of hostile expressions towards that baker's religious beliefs inconsistent with the Free Exercise Clause); *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022) (holding that the Free Exercise and Free Speech Clauses of the First Amendment protect engaging in personal religious observance against government reprisal, and that the Constitution does not require nor permit suppression of religious expression).

The Government replies that Defendant's First Amendment interests are not explicitly special circumstances under *Sell*. Even if Defendant's First Amendment interests were to rise to a special circumstance under *Sell*, Defendant's interests do not mitigate or outweigh the United States' strong interest in restoring Defendant to competency for the purposes of pursuing the

criminal case.[2] ECF No. [105] at 6. Further, the Government argues that the recent cases Defendant relies upon are neither criminal cases nor do they relate to forcible medication, and therefore provide no support for Defendant's argument that a deeply held religious belief is a mitigating special circumstance under *Sell*. *Id*.

The Defendant's reliance on the three recent Supreme Court cases is misplaced. Those cases in which "wide deference and latitude" was given to a person exercising sincerely held religious beliefs do not address the forcible medication of a defendant in a criminal case. Therefore, the principles espoused in those cases do not provide guidance to the specific issue before this Court.

Next, Defendant asserts that to survive a claim against the Government under the First Amendment's Free Exercise Clause, he must demonstrate "a substantial burden" on a sincerely held religious belief. ECF No. [102] at 7. Defendant argues that by forcing him to consume medication, the Government would impose a "substantial burden" on his deeply held religious beliefs. *Id.* at 8.

Defendant relies on *Robbins*, *Muhammad*, and *Midrash.* ECF No. [102] at 7-8 (citing *Robbins v. Robertson*, 782 F. App'x 794, 801 (11th Cir. 2019); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004); *Muhammad v. Inch*, No. 3:18-CV-212-J-25JBT, 2020 WL 13518236 (M.D. Fla. Mar. 10, 2020)).

In *Robbins*, the plaintiff, a Muslim state inmate, filed a § 1983 complaint against the warden and food service director alleging that he was forced to choose between violating Islamic dietary restrictions or suffering from malnutrition in violation of his rights under the Religious Land Use

---

[2] The Government asserts the governmental interests at stake include the protection of human life and security inherent in Section 373, as well as the importance of obtaining an actual sentence against the Defendant to protect the purpose and effectiveness of the criminal justice system. ECF No. [105] at 7.

and Institutionalized Persons Act (RLUIPA), the First Amendment, and the Eighth Amendment. *Robbins*, 782 F. App'x at 800-01. The Eleventh Circuit reversed the dismissal of the plaintiff's First Amendment claim and found that the plaintiff had made a "plausible claim" that the prison officials substantially burdened the exercise of his religious belief. *Id*. The court reasoned that to state a claim under the First Amendment's Free Exercise Clause, a plaintiff must plead facts showing a "substantial burden" on a sincerely held religious belief. *Id*. at 801. "A 'substantial burden' . . . involves something more than an incidental effect or inconvenience on religious exercise and 'is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly.'" *Id*. 801-02 (internal quotations omitted) (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)).

The Eleventh Circuit in *Robbins* also pointed out that similar definitions of "substantial burden" should be applied when assessing claims under both RLUIPA and the Free Exercise Clause. *Id*. at 802 n.5. In *Midrash*, the court found that under RLUIPA a municipal zoning decision that required two synagogues to relocate did not impose a "substantial burden" on their religious exercise. *Midrash Sephardi, Inc.*, 366 F.3d at 1227-28. The court held that although the zoning decision would require their congregants to walk further to access the congregations, the regulation did not completely prevent the congregations from engaging in religious activity, nor did it require participation in an activity prohibited by their religion. *Id*.

In *Muhammad*, the court found that the plaintiff had adequately alleged a substantial burden in the exercise of religion when the defendants refused to give the plaintiff medication during a specific time of day causing him to choose between observing Ramadan or experiencing the effects of malnutrition. *Muhammad*, No. 3:18-CV-212-J-25JBT, 2020 WL 13518236 at *5.

*Robbins* and *Muhammad* concerned inmates claiming a substantial burden under the First Amendment's Free Exercise Clause after they were sentenced and serving prison terms, while in *Midrash* the plaintiffs challenged a municipal zoning decision. Those cases are factually distinguishable because the courts did not address forcible medication of a criminal defendant to restore his competency to stand trial.

Defendant also relies on *Boyd* to assert that the Court should deny the Government's Motion because his life is not at risk, and he has always objected to taking mind-altering substances. ECF No. [102] at 8 (citing *In re Boyd*, 403 A. 2d 744, 749 (D.C. 1979)). In *Boyd*, The District of Columbia Court of Appeals held that in deciding whether to administer medical treatment to an incompetent person, the lower court had to first determine whether the person would have voluntarily accepted the treatment if they were competent. *Id.* at 749. However, *Boyd* did not involve a criminal charge nor a criminal matter that would implicate a serious governmental interest in forcibly medicating a defendant. Instead, in *Boyd*, the defendant was civilly committed by her son and the court did not analyze whether a special circumstance outweighed the government's interest in restoring the defendant to competency. *Id.* at 744. Thus, the argument under *Boyd*, that Defendant may have rejected the treatment if he were competent, is not relevant to the analysis of whether a "special circumstance" outweighs the government's important interest in medicating a defendant to restore competency to stand trial under *Sell*.[3]

Conversely, the Government contends that, "in applying *Sell* to pending criminal cases involving involuntary medication, courts have repeatedly found that the government's compelling interest in prosecuting serious crimes outweighs First Amendment interests that may exist." ECF

---

[3] The Court notes that the record provides conflicting statements as to Defendant's refusal to take "any form of antipsychotic medication" ECF No. [102] at 8-9. The Report from FMC Butner reveals that "[Defendant] said he previously took 'Seroquel' that was given to him by 'some guys, other inmates, my brothers' at FDC Miami." ECF No. [94] at 6. Defendant did not address this part of the record in his Response.

No. [105] at 6. The Government relied on *Smith*, *Santonio* and *Schloming*. *Id.* (citing *United States v. Smith*, No. 05-4000201-JAR, 2007 WL 1712812, at *4, n. 18 (D. Kan. June 12, 2007); *United States v. Santonio*, No. 2:00-CR-90C, 2001 WL 670932, at *2 (D. Utah May 3, 2001); *United States v. Schloming*, No. 05-5017, 2006 WL 1320078, at *4 (D.N.J. May 12, 2006)).

In *Smith*, the defendant was charged with distribution of a controlled substance. *Smith*, No. 05-40002-01-JAR, 2007 WL 1712812, at *3. The defendant, who had been in pre-trial custody for approximately twenty-eight months, stopped taking his antipsychotic medication motivated by his religious belief that God had healed him. *Id.* at *1-2. The court found the defendant was not competent to stand trial and the government moved to involuntarily medicate the defendant to restore his competency. *Id.* The court ordered a follow-up medical examination which addressed all the factors set forth in *Sell*. *Id.* at *2. The examination revealed that the defendant suffered from a mild form of schizophrenia. *Id.* Although the court noted that the defendant's religious beliefs about his condition were entrenched, it held that the government's compelling interest in prosecuting the serious crime outweighed the defendant's First Amendment rights. *Id.* at 4 n. 18.

In *Santonio*, the court did not consider any special circumstances under *Sell*. *Santonio*, 2001 WL 670932. However, the court noted that "[a]lthough the private interests in refusing unwanted administration of antipsychotic drugs are substantial, they are not absolute and must be balanced with interests of the government." *Id.* at *2. Similarly, in *Schloming*, the court did not address any First Amendment rights. *Schloming*, 2006 WL 1320078. Still, the court noted that First Amendment rights can be outweighed "if governmental interests are essential and overriding." *See id.* at *4.

Here, although Defendant's interest in refusing medication based on his deeply held religious beliefs may be substantial, they are still outweighed by the Government's interests in prosecuting Defendant for a serious crime.

**2. Length of Potential Sentence and Credit for Time Already Served**

In *Sell* the Supreme Court recognized a "special circumstance" exists that lessens the government's interest where a defendant has "already been confined for a significant amount of time 'for which he would receive credit toward any sentence ultimately imposed.'" *Sell*, 539 U.S. at 180.

Defendant argues that the Government's interest in forcibly medicating him is "further diminished when 'the defendant has already been confined for a significant amount of time' for which he would receive credit toward any sentence ultimately imposed" (approximately 46 months). ECF No. [102] at 11. Defendant asserts that to determine if he has been in custody "a significant amount of time" as compared to his likely sentence, the Court must calculate the time he has already served, his likely sentence, and then ask whether the former is significant compared to the latter. *Id.*

Defendant claims that while a conviction under 18 U.S.C. § 373 has a maximum penalty of twenty years of incarceration, his guidelines would be substantially less. *Id.* at 11-12. Defendant asserts that his likely offense level would be "22 or 21, coinciding with sentencing ranges of 37-46 months and 41-51 months, respectively." *Id.* at 12. Moreover, based on the information provided by the BOP, Defendant would likely be eligible for good time credits and thus required to serve less than 44 months. *Id.* at 13. Since Defendant was arrested on or about November 22, 2019, and has remained incarcerated since his arrest, he will be entitled to credit for having served a period of approximately 46 months by the time of filing the Response to this Motion. *Id.* at 11. Defendant

asserts that if this Court finds that the first *Sell* requirement is met, he will continue to be incarcerated for several more months prior to the litigation of the next three *Sell* prongs and the filing of objections and appeals.[4] *Id.* at 12. Thus, Defendant claims that constitutes a due process violation: to "forgo his 'significant liberty interest in avoiding the unwanted administration of antipsychotic drugs,' or spend more time incarcerated than those with the same offense level and criminal history who are not incompetent." *Id.* at 13.

The Government replies that Defendant underestimates his expected guidelines and calculates Defendant's guidelines to be between 133-168 months. ECF No. [105] at 4. Moreover, although United States Sentencing Guidelines § 2A1.5 (Solicitation to Commit Murder), carries a base offense level 33, the Government estimates the 12-level terrorism enhancement under § 3A1.4 likely applies and Defendant's criminal history would automatically be a Category VI, and his offense level would be 45.[5] *Id.*

The Government relies on *Gillenwater* for support of its argument that the guideline range is not a special circumstance mitigating the Government's interests in prosecuting a defendant held in custody. *U.S. v. Gillenwater*, 749 F.3d 1094 (9th Cir. 2014). In *Gillenwater*, the court reasoned that the defendant was "accused of making lurid and distressing threats against a bevy of government officials and employees." *Id.* at 1101. Although the defendant had been in custody for

---

[4] Defendant further asserts that the nine months it took the Government to transfer Defendant to FMC-Butner to begin efforts to restore his competency is another special circumstance mitigating the Government's interests. ECF No. [102] at 11. However, the delays in Defendant's transfer and treatment are not excessive, considering the statutory maximum, possible guidelines sentence, and the typical wait time to enter a medical center for a 4241(d) evaluation and restoration treatment (approximately eight to 12 months). *See, e.g. United States v. Lara*, No. 1:21-CR-1930-MLG, (D. N.M. May 4, 2023) at Docket Entry 40-1 at 2, ¶5 (declaration of Dr. Dia Boutwell). Thus, the delays do not mitigate the Government's interests in pursuing its criminal case against Defendant.

[5] The Government acknowledges that given that statutory maximum for Count 1 is 20 years imprisonment, Defendant's guideline range would be capped at the 20-year statutory maximum. ECF No. [105] at 4.

32 months, and the likely guideline range was 33 to 41 months, the Ninth Circuit held that the charged offenses were "serious enough to establish an important governmental interest in [the defendant's] prosecution." *Id.* That a defendant has been confined for a significant amount of time "affects but does not totally undermine the strength of the need for prosecution." *Id.* (quoting *Sell v. United States*, 539 U.S. 166, 180 (2003)). The court noted that if charged, that defendant may have sentences that run consecutively, or face supervised release, a condition that courts had already "found significant in evaluating the government's showing on the first *Sell* factor." *Id.* at 1102 (citations omitted).

Moreover, Defendant's argument that he believes his sentence may be lower than the statutory maximum 20 years is not a factor when determining the serious nature of his crime. Courts have consistently rejected the consideration of a defendant's individual sentencing guideline discussion that may potentially reduce a sentence when the serious nature of the crime under *Sell*. *See U.S. v. Benitez*, 19-cr-80141, 2020 WL 7332310, at *2 (S.D. Fla. Dec. 2020) ("Courts in this District have frequently found that the best objective measure of the seriousness of the alleged crime is the maximum penalty authorized by statute. The Court sees no reason to depart from this line of cases."); *See also United States v. Rodriguez*, 281 F. Supp 1284, 1294 (S.D. Fla. 2017) ("Courts that favor the statutory maximum yardstick disfavor using the Sentencing Guidelines as a measure of seriousness. This is because the Sentencing Guidelines are not determined with certainty until after a defendant has been convicted; they are not binding on the court, and they reflect the views of the Sentencing Commission rather than Congress"); *See also United States v. Green*, 532 F.3d 538, 550 (6th Cir. 2008) ("the Supreme court has spoken on this very point in other jurisprudence [w]hether a crime is 'serious' should be determined by the maximum statutory penalty . . . the sentencing guidelines are [] advisory and a district court is not

required to impose a particular sentence in accordance with the projected range." Further, "many variables impact a potential range [and] [n]one of this information would be available to a district court at the time it must make the seriousness determination on an involuntary medication request.").

As stated, Defendant is charged with Solicitation to Commit a Crime of Violence based on his alleged conduct—requesting Confidential Human Sources to contact members of ISIS and instruct them to conduct various attacks, including an attack on the deans of two local colleges from which Defendant had been suspended or expelled with "as big as possible" explosive devices. ECF No. [3] at 4-5. Relying on the Government's estimated guidelines calculation of 133-168 months, and based on the terrorism enhancement, this Court finds that although Defendant has served a period of approximately 46 months for which he would receive credit if ultimately sentenced, the conduct alleged is nonetheless serious enough to establish an important governmental interest in Defendant's prosecution that outweighs such a special circumstance. Defendant is correct that under *Sell*, the length of time already spent in confinement may be a special circumstance mitigating the Government's important interest in forcibly medicating a defendant to stand trial. However, the 46 months Defendant has spent at time of the filing of his Response does not present a special circumstance given the twenty-year statutory maximum sentence he is facing. *See U.S. v. Evans*, 404 F.3d 227, 239 (4th Cir. 2005) (holding that credit for a confinement lasting more than two years in a medical facility was not a special circumstance mitigating the government's interest in prosecuting the defendant as the government would still have an important interest in prosecuting a crime that would still result in an almost eight-year sentence).

### 3. Possible Insanity Defense and Civil Confinement

Defendant argues that the possibility of an insanity defense and civil confinement constitute a "special circumstance" under *Sell* that outweighs the Government's interest. ECF No. [102] at 17. Defendant asserts that "[w]hile a notice of insanity has not yet [been] filed with Court and cannot be without a competent defendant who chooses to proceed in that matter, the Court can rely on the evidence before it to determine that an insanity defense is a real possibility." *Id.* Defendant claims that it is clear from his statements, which led to his arrest and charge, that he suffered from a major mental illness with "on-going delusions during the interview and transportation." *Id.* at 17-18. Defendant also asserts that even if he is made competent and is tried and sentenced, none of the goals of punishment are satisfied. *Id.* at 19.

The Government asserts that the possible insanity defense is not a sufficient "special circumstance" under *Sell*. ECF No. [105] at 8. Defendant has not yet filed an insanity defense and conceded that such a notice and defense cannot be pursued without a competent defendant choosing to proceed with that defense. *Id.* Further, the Government argues that "the possibility of civil commitment is too remote at this juncture to diminish [its] interests." *Id.* at 10.

In *Sell,* the Supreme Court noted that a defendant's failure to take drugs voluntarily may result in lengthy confinement in a mental institution, which would diminish the Government's interest in prosecuting a defendant who committed a serious crime. *Sell*, 539 U.S. at 180 ("The potential for future confinement affects, but does not totally undermine, the strength of the need for prosecution.").

Defendant relies on *Weinberg*, *Ruiz–Gaxiola*, *Morrison* and *Grigsby*, to assert that the Government's interest in prosecuting a defendant is mitigated when the crime was committed due to the defendant's mental illness. ECF No. [102] at 19 (citing *United States v. Weinberg*, 743 F. Supp. 2d 234 (W.D.N.Y. 2010); *United States v. Ruiz–Gaxiola*, 623 F.3d 684 (9th Cir. 2010);

*United States v. Morrison*, 415 F. 3d 1180 (10th Cir. 2005); *United States v. Grigsby*, 712 F. 3d 964 (6th Cir. 2013)).

In *Weinberg*, the court found that the defendant's behavior and factual circumstances surrounding his charge — threatening a judicial officer — seemed consistent with the defendant's illness of schizophrenia with paranoid delusions. *Weinberg*, 743 F. Supp. 2d at 237. Thus, the court determined that the Government's interest in continuing the defendant's prosecution was very low. *Id*. In *Ruiz–Gaxiola*, the court noted that in some cases, the fact that the offense was the result of a mental disorder might render the government's interest less important. *Ruiz–Gaxiola*, 623 F.3d at 695. However, the court assumed that the defendant's prosecution would serve an important governmental interest — because of the potentially lengthy sentence, 100 to 125 months, for illegal reentry in violation of 8 U.S.C. § 1326 — notwithstanding that the principal cause of his conduct was his mental disorder. *Id.* The court based it's finding on the possibility that the defendant might repeat the offense due to his mental illness, his Delusional Disorder, grandiose type. *Id.*; *see Morrison*, 415 F.3d at 1186 (recognizing the government may not have an interest in prosecuting a defendant when the defense expert and the Bureau of Prisons both concluded that the defendant "was entitled to an insanity defense" and vacating and remanding the case on other grounds).

In *Grigsby*, the court weighted the fact that the defendant might have been able to raise an insanity defense against the government's interest. *See Grigsby*, 712 F.3d at 972. The court relied on the testimony of a medical doctor for the government who "testified to a reasonable degree of psychological certainty that [the defendant might have been] able to raise an insanity defense" and that a risk assessment for civil commitment under § 4246 was likely the next step if the defendant was not forcibly medicated. *Id. See, United States v. Cruz*, 757 F.3d 372, 389 (3d Cir. 2014) (finding no plain error in the district court's conclusion that uncertainty as to whether the defendant

would face civil commitment neither materially diminished nor undermined the Government's interest).

Here, the potential of civil commitment due to Defendant's mental condition affects but does not totally undermine the Government's interest in prosecuting this serious crime.[6] *See Sell*, 539 U.S. at 180. Like in *Grigsby*, here, Dr. Sharf and Mr. Abrams's report explains that if this Court finds that the first *Sell* factor is not met, Defendant may be subject to further evaluation under § 4246. ECF No. [94] at 20; *see Grigsby*, 712 F.3d at 972. However, the report does not address nor provide statements from the medical doctors that Defendant may raise an insanity defense, let alone to a reasonable degree of psychological certainty as in *Grigsby*. *See* ECF No. [94] at 20.

Additionally, the courts in *Weinberg* and *Grigsby* concluded — after considering *all* the *Sell* factors — that the government had failed to establish that forced administration of medication should be ordered. *Weinberg*, 743 F. Supp. 2d at 241; *Grigsby*, 712 F.3d at 976. However, in the present case, the Court has only been asked to consider the first *Sell* factor, the existence of "important governmental interests." ECF No. [96] at 1. Thus, while the *Weinberg* and *Grigsby* courts considered, among other factors, the medical appropriateness of the proposed treatments and the severity of potential side effects, the Court is limited to deciding only whether those special circumstances outweigh the Government's interest. *Weinberg*, 743 F. Supp. 2d at 241; *Grigsby*, 712 F.3d at 976.

---

[6] As in *Ruiz–Gaxiola*, the Court assumes at this juncture that the defendant's prosecution would serve an important governmental interest, notwithstanding the possibility that the principal cause of his conduct was his mental condition. *See Ruiz–Gaxiola*, 623 F.3d at 695.

Accordingly, the possibility of civil commitment or Defendant's possible insanity defense do not outweigh the Government's interest in forcibly medicating Defendant to restore his competency in order to stand trial.

The Court finds that the Government has met its burden of proof by clear and convincing evidence on the first *Sell* factor, that it has an important governmental interest in bringing Defendant to trial given the statutory maximum penalty, the serious nature of the offenses, and that Defendant's arguments as to potential special circumstances do not mitigate or lessen the Government's interests. *See United States v. Doten*, No. 21-60274-RAR, 2023 WL 6985486, at *3 (S.D. Fla. Oct. 24, 2023) (the court was "satisfied by clear and convincing evidence" that the first *Sell* factor was met given the statutory maximum of the offense, defendant's credit for time served was "just over half of the statutory maximum sentence [but still] insufficient to outweigh the Government's interest in forcibly medicating [d]efendant," and no other special circumstances lessened the Government's interests); *See also State v. Hicks*, No. 2011 CR 0683, 2011 WL 9349971 (Ohio Com. Pl. Nov. 18, 2011) (finding that the state had proven the first *Sell* factor by clear and convincing evidence as the defendant was indicted on four counts with potential six-to-twelve-month sentences each, and thus determined serious, without existence of special circumstances to undermine the Government's interests in prosecuting that defendant); *See United States v. Diaz*, 630 F.3d 1314, 1329 (11th Cir. 2011) (noting the district court's finding that the first *Sell* factor was proven by clear and convincing evidence given the alleged crimes were serious, and no significant special circumstances lessened the Government's important interest in bringing the defendant to trial).

## IV.   <u>CONCLUSION</u>

Based on the foregoing, it is **ORDERED AND ADJUDGED** that:

Case No. 19-cr-20803-BLOOM

1.  The Government's Motion, **ECF No. [96],** as to the first prong of *Sell* is **GRANTED**.

2.  The Bureau of Prisons submit an Addendum to the Forensic Evaluation outlining the proposed treatment regimen and recommended medication it would involuntarily administer to Defendant to attempt to restore him to competency. As part of that Addendum, the United States further asks that the Court request the Bureau of Prisons include information about how the proposed treatment regimen will be in Defendant's best medical interest, will give him the best chance of being restored to competency, and minimizes the risks of negative consequences. This Addendum shall be provided to the Court, and to counsel for Defendant and the Government, and shall be **filed under seal by December 20, 2023**.

      **DONE AND ORDERED** in Chambers at Miami, Florida, on November 20, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record