UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cr-20803-BLOOM

UNITED STATES OF AMERICA,

     Plaintiff,

v.

SALMAN RASHID,

     Defendant.

_____/

## ORDER

**THIS CAUSE** is before the Court upon the parties' briefings following this Court's Order on the Government's Motion for an Order Requiring the Involuntary Treatment of the Defendant to Restore Competency ("Order"), ECF No. [120]. In that Order, this Court determined that the Government failed to satisfy all remaining *Sell* factors and required a supplemental response from the Government. *Id*.

The Government filed a Response ("Response"), ECF No. [121]. *Guardian Ad Litem*, Khurrum Wahid ("Guardian") filed his Report ("Report"), ECF No. [129], and Defendant's attorney filed Defendant's Reply, ("Reply"), ECF No. [130].

The Court has reviewed the Response, Report, Reply, the record, and is otherwise fully advised. For the reasons that follow, and based upon the agreement between the parties, the Court orders the Guardian to contact the Khalil Center and confirm its ability to treat Defendant while detained at MCC Chicago.

## I.    BACKGROUND

On November 21, 2019, Defendant was charged by Indictment with one Count of Solicitation to Commit a Crime of Violence, in violation of 18 U.S.C. § 373. ECF No. [9]. After

delays due to the COVID-19 pandemic, Defendant's counsel sought to have Defendant evaluated to determine his competency to proceed to trial.

On July 12, 2022, the Court conducted a hearing and found Defendant to be suffering from a mental disease or defect rendering him mentally incompetent and unable to understand the nature and consequences of the proceeding against him or to assist properly in his defense. ECF No. [86]. As a result, the Defendant was ordered to be committed to a Federal Medical Center ("FMC") to determine whether there was a substantial possibility in the foreseeable future that he would be restored to competency to stand trial. *Id.*

On September 1, 2023, the Government filed a Motion for a Finding that the United States has an Important Governmental Interest Supporting Involuntary Medication to Restore Rashid's Competency ("First Motion"). ECF No. [96]. The involuntary medication of a defendant to restore him or her to competency is permissible in rare instances under *Sell v. United States.* 539 U.S. 166, 180 (2003). *Id*. at 1. The Government argued that the first factor enunciated in *Sell* was satisfied and it had a sufficient interest because Defendant was charged with a serious crime, shown by the crime's statutory maximum penalty. *Id.* at 6-7. Defendant responded the Government lacked a sufficient interest in prosecuting Defendant because he is not charged with a serious crime and because special circumstances exist, including Defendant's First Amendment right to exercise his religious beliefs. ECF No. [102]. The Government replied that the sentencing guidelines underscore the seriousness of Defendant's crime and Defendant's First Amendment interests do not mitigate governmental interests. ECF No. [105]. On November 20, 2023, the Court found the first *Sell* factor was satisfied. ECF No. [106]. The Court also ordered the Bureau of Prisons to submit an Addendum to the Forensic Evaluation ("Addendum") outlining the proposed treatment regimen and recommended medication for Defendant. *Id.*

On January 9, 2024, the Government filed its Motion for An Order Requiring the Involuntary Treatment of the Defendant to Restore Competency Addressing the Remaining Three Prongs of *Sell*. ECF No. [108]. Concurrently, Defendant filed a motion seeking the appointment of a *guardian ad litem* for Defendant to represent Defendant's best interests and who shares similar religious beliefs. ECF No. [112]. On February 21, 2024, the Court granted the Motion, and on April 2, 2024, Khurrum B. Wahid ("Guardian") was appointed the *guardian ad litem* as recommended by Defendant's counsel. ECF No. [119].

Thereafter, Defendant filed a Response in Opposition, and the Government filed a Reply. ECF Nos. [111], [117]. This Court issued its Order, and determined that the Government failed to satisfy all *Sell* factors and required the Government to file a supplemental response and advise:

> (1) the side effects the proposed medications might have on Defendant's demeanor and ability to assist counsel in his defense; and
> (2) that there are no less intrusive treatments available to restore Defendant to competency.
> ECF No. [120] at 14.

The Government responded with a Second Forensic Evaluation Addendum ("Second Evaluation") prepared by the Bureau of Prisons Staff Physician Charles A. Cloutier, M.D. ECF No. [121] at 1. Relying on the Second Evaluation, the Government argued that the side effects of the involuntary medication planned were "*substantially unlikely* to alter his demeanor to appear nervous, remorseless, or sedated." *Id*. at 2 (emphasis in original). Next, the Government asserted that "'there are no non-pharmacological options that would achieve the same results as antipsychotic medication' for restoration to competency" and therefore, "it is clear there are no less intrusive treatments available to restore the Defendant to competency" under the second and third *Sell* factors. *Id*.

The Guardian reported that an attempt to provide therapy for Defendant with a psychological professional who can use theological knowledge to help Defendant to separate reality from fiction stemming from Defendant's faith, would be ideal. ECF No. [129] at 7. However, the Guardian observed that given Defendant was held at FMC Butner for sixteen months and not improving, it is in Defendant's best interest to use the fastest approach towards potential competency which is via medication. *Id.*

Defendant's attorney disagrees with the Guardian and obtained the consent from the Government to transfer Defendant to MCC Chicago for specialized treatment at the Khalil Center. Defendant seeks an order (1) denying the Government's Motion to compel the involuntary medication of Defendant; (2) to order Defendant to be transferred to MCC Chicago; and (3) to order that Defendant receive psychological treatment by the Khalil Center. *Id.* ECF No. [130] at 6-7.

## II. LEGAL STANDARD

### A. *Sell* Factors

In *Sell,* the United States Supreme Court provided four factors for courts to evaluate to determine whether to order involuntary medication to restore a defendant to competency in order to stand trial. *Id.* at 180-82. The Court held that to constitutionally administer involuntary antipsychotic medication to a mentally incompetent defendant, the United States must show: (1) there are important governmental interests at stake; (2) the involuntary medication will significantly further those concomitant state interests; (3) the involuntary medication is necessary to further important interests; and (4) the administration of the medication is medically appropriate. *Id.* This Court has already determined that the United States has satisfied the first factor of *Sell.* ECF No. [106].

4

The second factor of *Sell* is satisfied if "involuntary medication will *significantly further* []
concomitant state interests." *Id.* at 181 (emphasis in original). In so doing, a court must find that
the "administration of drugs is substantially likely to render the defendant competent to stand trial.
. . [and] is substantially unlikely to have side effects that will interfere significantly with the
defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial
unfair." *Id.* (citing *Riggins v. Nevada,* 504 U.S. 127, 142-45, (1992) (Kennedy, J., concurring)).
The administration of drugs is not acceptable unless the United States shows that the side effects
will not alter the defendant's reactions or diminish his capacity to assist counsel. *Riggins,* 504 U.S.
at 143. Central to this holding is the principle that antipsychotic drugs may alter a defendant's
demeanor to appear nervous, remorseless, sedated to a judge or jury, all behaviors that could
prejudice the defense. *Id.* Those prejudices implicate serious due process concerns. *Id.* at 142.

The third *Sell* factor requires a court to find that the "involuntary medication is *necessary*
to further those interests." *Id.*, 539 U.S. at 181 (emphasis in original). A court "must find that any
alternative, less intrusive treatments are unlikely to achieve substantially the same results." *Id.*

### III.    DISCUSSION

The Government responded to this Court's Order with a Second Forensic Evaluation
Addendum ("Second Evaluation") prepared by the Bureau of Prisons Staff Physician Charles A.
Cloutier, M.D. ECF No. [121] at 1. Relying on the Second Evaluation, the Government argued
that the side effects of the involuntary medication planned were "*substantially unlikely* to alter his
demeanor to appear nervous, remorseless, or sedated." *Id.* at 2 (emphasis in original). Next, the
Government asserted that "'there are no non-pharmacological options that would achieve the same
results as antipsychotic medication' for restoration to competency." *Id.* at 3. This conclusion was
based in part "on the repeated failed attempts [] made to try and treat the Defendants through

therapy." *Id*. at 4. The Government then reasoned "it is clear there are no less intrusive treatments available to restore the Defendant to competency" under the second and third *Sell* factors. *Id*.

This Court then ordered Defendant's attorney and the Guardian to file supplemental replies. ECF No. [122]. After visiting with Defendant and conducting interviews with Defendant, staff at FMC-Butner, Defendant's family, and various Imams, the Guardian filed his Report. Through discussions with a treating physical at FMC Butner, the Guardian determined that "Mr. Rashid has not been offered therapy but has been engaged in restoration classes." ECF No. [129] at 4. The treating physician at FMC Butner advised that Defendant suffers from Delusional Disorder, which "would render therapy unbeneficial." *Id*. However the psychologist retained by Defendant's attorney, Dr. Marie DiCowden, opined that the medical diagnosis was incorrect, and the medical solution was also incorrect. *Id*. at 5. Instead, therapy with a professional who understands Defendant's faith is the appropriate first step and least intrusive method to restore Defendant to competency in this case. *Id*.

The Guardian reported that "it was surprising that no efforts at individual psychological therapy have been attempted." *Id*. at 7. While the Guardian believed "a psychological professional who can use the theological knowledge to help Mr. Rashid" would be ideal, as Defendant has been at FMC Butner for over sixteen months "with no signs of restoration. . . it is in the best interest to use the fastest approach towards potential competency which at this point is via medication." *Id*. The Guardian also reported that Defendant has been isolated from contact with his family, friends, "and even access to reasonable religious counsel [which] does not help him be grounded in reality." *Id*. at 8.

Defendant's attorney replied that the Government's prior statements that "Defendant participated in group therapy and individualized sessions" contrast with the Report that Defendant

has not received any individual therapy during the sixteen months "he has been receiving 'treatment' at FMC-Butner." ECF No. [130] at 3. Based on the findings in the Report and the background in this case, Defendant's attorney argues that Defendant should be transferred to MCC Chicago so that he can receive treatment by specialized practitioners at the Khalil Center. *Id*. at 5. Defendant's attorney avers that the Khalil Center is uniquely positioned as it has the requisite psychological credentials and employs a psychological approach, integrating the science of psychology with an emphasis on psychological reconstruction and behavioral reformation. *Id*. at 5. Defendant's attorney maintains that Dr. Fahad Khan of the Khalil Center "is quite likely the country's most qualified psychotherapist to provide competency restoration to [Defendant]."

The Guardian advises that he spoke to various Imams in South Florida, and they indicated counseling at the Khalil center was a viable option given the need for medical treatment, and "spoke well of it as a clinical therapy center." ECF No. [129] at 6. The Guardian points out that Defendant already indicated he would be open to treatment at the Khalil Center in prior pleadings. However, the Guardian did not contact the Khalil Center as he was unsure how treatment there could be affected procedurally. *Id*.

On August 20, 2024, Defendant's attorney spoke with the Government's attorney who advised that the Government would not object to transferring Defendant to MCC Chicago to seek treatment at the Khalil Center "prior to the compelled administration of medication." ECF No. [130] at 6. Defendant's attorney then informed the Guardian that the Government would not object to Defendant's transfer to MCC Chicago. It appears that the Guardian is also in agreement with the therapeutic treatment at the Khalil Center. *Id*.

Because the Defendant's attorney, the Guardian, and the Government all agree to transfer Defendant to MCC Chicago to receive treatment by Dr. Khan and the Khalil Center's

psychological team with the objective of restoring Defendant to competency to stand trial, the Court finds this next step to be reasonable. The Court orders the Guardian to contact the Khalil Center and confirm its ability to treat Defendant while detained at MCC Chicago. The Guardian shall then file a notice with the Court advising when treatment is scheduled to commence, and the Court will then issue an order to transfer Defendant. Once Defendant begins treatment at the Khalil Center, the Guardian shall file a status report every six months advising that the treatment plan is being adhered to, the current progress achieved in restoring Defendant to competency to stand trial, and an anticipated completion date of treatment.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.  The Guardian shall file his notice with this Court on or before **October 25, 2024**.

2.  Upon confirmation of treatment  by the Khalil Center and the commencement date, the Court will order transfer of the Defendant.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 11, 2024.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

8